UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JAY KERR,

                      Plaintiff,

      v.

ANDREW M. SAUL,[1] Commissioner of
  Social Security,

                      Defendant.
_____

**DECISION
and
ORDER**

**18-CV-01095F**
(**consent**)

APPEARANCES:          LAW OFFICES OF KENNETH R. HILLER, PLLC
                            Attorneys for Plaintiff
                            JUSTIN GOLDSTEIN, of Counsel
                            6000 North Bailey Avenue
                            Suite 1A
                            Amherst, New York 14226

                            JAMES P. KENNEDY, JR.
                            UNITED STATES ATTORNEY
                            Attorney for Defendant
                            Federal Centre
                            138 Delaware Avenue
                            Buffalo, New York 14202;

                            DENNIS J. CANNING
                            Special Assistant United States Attorney, of Counsel
                            Social Security Administration
                            Office of General Counsel
                            601 E. 12th Street
                            Room 965
                            Kansas City, Missouri 64106, and

                            VERNON NORWOOD
                            Social Security Administration
                            Office of General Counsel, of Counsel
                            26 Federal Plaza
                            Room 3904
                            New York, New York 10278

---

[1] Andrew M. Saul became Commissioner of the Social Security Administration on June 17, 2019, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case. No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

**JURISDICTION**

On October 7, 2019, this matter was reassigned to the undersigned before whom the parties to this action consented pursuant to 28 U.S.C. § 636(c) to proceed in accordance with this court's June 29, 2018 Standing Order (Dkt. No. 10). The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on May 1, 2019 (Dkt. No. 6), and by Defendant on June 26, 2019 (Dkt. No. 8).

**BACKGROUND**

Plaintiff Jay Kerr ("Plaintiff"), brings this action under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application filed with the Social Security Administration ("SSA"), on February 18, 2015, for Social Security Disability Insurance ("SSDI"), ("disability benefits"). Plaintiff alleges he became disabled on October 21, 2013, based on a back condition, spinal nerve injury, herniated disc and diabetes. (R. 209).

Plaintiff's application[2] for disability benefits was denied on April 15, 2015 (R. 109). At Plaintiff's timely request, on May 3, 2017, a hearing was held in Falls Church, Virginia (R. 48-81). Plaintiff, Plaintiff's attorney James Ratchford, Esq., ("Ratchford"), and vocational expert Mr. Grizik ("VE"), testified at the hearing via videoconference in Buffalo, New York. On June 5, 2017, the ALJ issued a decision denying Plaintiff's claim (R. 10-20) ("the ALJ's decision"), which Plaintiff timely appealed to the Appeals Council. (R. 4). On August 9, 2018, the Appeals Council issued a decision denying Plaintiff's

---

[2] Plaintiff's initial application for disability benefits was filed on May 30, 2014, and denied on April 14, 2015. (R. 99).

request for review, rendering the ALJ's decision the Commissioner's final decision. (R. 1-4). On October 9, 2018, Plaintiff commenced the instant action seeking judicial review of the ALJ's decision. (Dkt. No. 1).

On May 1, 2019, Plaintiff moved for judgment on the pleadings (Dkt. No. 6) ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 6-1) ("Plaintiff's Memorandum"). On June 26, 2019, Defendant moved for judgment on the pleadings (Dkt. No. 8) ("Defendant's Motion"), attaching the Commissioner's Brief in Support of the Defendant's Motion for Judgment on the Pleadings (Dkt. No. 8-1) ("Defendant's Memorandum"). Plaintiff filed on July 17, 2019, Plaintiff's Response to the Commissioner's Brief (Dkt. No. 9) ("Plaintiff's Reply"). Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.

## **FACTS**[3]

Plaintiff Jay Kerr ("Plaintiff"), born on October 23, 1958 (R. 205), was 54 years old as of October 21, 2013, Plaintiff's alleged disability onset date ("DOD"), is married and lives with his wife and daughter. Plaintiff's past relevant work includes work as a corrections officer from June 1985 until October 18, 2013, when Plaintiff stopped working as a result of neck pain. (R. 210).

On October 20, 2013, Plaintiff sought treatment from the emergency room at Sisters Hospital for neck pain. (R. 262). Upon examination, John Carter, M.D. ("Dr.

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

3

Carter"), diagnosed Plaintiff with dextroscoliosis (spinal curvature) of Plaintiff's thoracic spine, and prescribed Lortab to treat Plaintiff's pain. (R. 268).

On October 24, 2013, Douglas B. Moreland, M.D. ("Dr. Moreland"), completed a consultative examination of Plaintiff, diagnosed Plaintiff with degenerative disc disease at Plaintiff's C6-C7[4] disc segments, and recommended Plaintiff undergo a magnetic resonance imaging ("MRI") scan. (R. 272). On October 29, 2013, Krishnan Kartha, M.D. ("Dr. Kartha"), reviewed Plaintiff's cervical MRI and diagnosed Plaintiff with a C7-T1 annual tear with paracentral disc herniation, and mild disc bulges at Plaintiff's C5-C6 and C6-C7 disc segments. (R. 283).

On November 27, 2013, Dr. Moreland completed anterior cervical microdiscectomy and fusion surgery of Plaintiff's C7-T1 disc segment. (R. 304).

On April 4, 2014, a cervical spine MRI revealed status post C7-T1 disc fusion, and stable disc bulges at Plaintiff's C5-C6 and C6-C7 disc segments. (R. 361-62).

On April 22, 2014, Dr. Moreland evaluated Plaintiff with normal range of motion ("ROM") of Plaintiff's cervical spine and upper extremity with decreased reflexes of Plaintiff's left shoulder. (R. 333).

On May 15, 2014, Keith Stube, M.D. ("Dr. Stube"), completed a consultative orthopedic examination of Plaintiff and evaluated Plaintiff with a left shoulder partial thickness tear of Plaintiff's shoulder. (R. 336-37).

On July 18, 2014, Timothy F. Harrington, M.D. ("Dr. Harrington"), completed a physical examination of Plaintiff and noted that Plaintiff reported that Plaintiff was

---

[4] C6 and C7 refer to numbered segments of an individual's cervical spine.

applying for disability benefits and Plaintiff had concerns that he would be unable to protect himself during physical altercations with inmates. (R. 338).

On August 11, 2014, Hongbiao Liu, M.D. ("Dr. Liu"), completed a consultative physical examination of Plaintiff and evaluated Plaintiff with normal gait and stance, the ability to walk on his heels and toes, rise from a chair without difficulty, normal ROM of the upper and lower extremities, and opined that Plaintiff had no limitations for routine activities. (R. 354-56). On April 1, 2015, Dr. Liu completed a second consultative physical examination of Plaintiff and noted that Plaintiff was able to rise from a chair without difficulty, had mild to moderate limitations to carrying, lifting, and reaching overhead, and mild limitations to tying, zipping and buttoning with his left hand. (R. 531).

On October 24, 2014, Michael Cicchetti, M.D. ("Dr. Cicchetti"), completed a physical examination on Plaintiff for left elbow pain, evaluated Plaintiff with tendinosis (tennis elbow), minimal degenerative changes, and diagnosed Plaintiff with left elbow osteoarthritis and lateral epicondylosis (overuse). (R. 393).

On January 16, 2015, Dr. Cicchetti completed a physical examination of Plaintiff and noted that Plaintiff reported improved pain after taking his Gabapentin medication. (R. 413).

On February 20, 2015. Dr. Cicchetti noted that Plaintiff reported increased neck pain after moving a snowblower from his garage. (R. 543).

On June 25, 2015, Dr. Cicchetti's Physician Assistant Anna Roberts ("P.A. Roberts"), completed a physical residual functional capacity assessment of Plaintiff and evaluated Plaintiff with limitations to sitting, standing and walking for one hour in an

5

eight-hour workday, occasional lifting and carrying up to 20 pounds, and frequent stooping and crouching. (R. 535).

On July 14, 2015, Dr. Harrington completed a residual functional capacity assessment of Plaintiff and noted that Plaintiff was able to sit for four hours and stand and walk for a total of three hours during a normal workday. (R. 551).

## DISCUSSION

**1.    Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A). A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather,

"the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id.* "Congress has instructed . . . that the factual findings of the Secretary,[5] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d60, 62 (2d Cir. 1982).

**2.    Disability Determination**

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits. *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a). The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). If the claimant meets the criteria at any of the five steps, the inquiry ceases and the claimant is not eligible for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a

---

[5] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience. 42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d). As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" or "RFC" which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(e) and 416.920(e). If the applicant remains capable of performing PRW, disability benefits will be denied, *id.*, but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c). The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

    In the instant case, the ALJ found that Plaintiff met the Act's insured status requirement for SSDI through December 31, 2018, (R. 12), did not engage in substantial gainful activity since October 21, 2013, Plaintiff's alleged disability onset date, suffers from the severe impairments of degenerative disc disease and shoulder impingement syndrome, and that Plaintiff's diabetes has no more than a minimum

impact on Plaintiff's ability to perform basic work activities and is thus, a non-severe impairment. (R. 13). The ALJ further found Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in Appendix 1 (R. 13), retains the RFC to perform light work with limitations to frequent balancing, reaching, handling, fingering, occasional kneeling, crouching, crawling, climbing ramps and stairs, no climbing ropes, ladders or scaffolds (R. 16), is unable to perform his PRW as a corrections officer (R. 18), but, given that Plaintiff is an individual of advanced age as of Plaintiff's alleged disability onset date, has a high school education and the ability to communicate in English, has the residual functional capacity to perform light work with transferable skills from his PRW, jobs exist in significant numbers in the national economy that Plaintiff can perform, including security guard, gate guard, and merchant patroller such that Plaintiff is not disabled as defined under the Act. *Id.* at 19.

Plaintiff argues that the ALJ erroneously applied the treating physician rule by affording little weight to Dr. Harrington's opinion that Plaintiff was able to sit for four hours and stand or walk for a total of three hours in an eight-hour workday, because Dr. Harrington's findings were set forth on a check-box form with little explanation, Plaintiff's Memorandum at 16-20 (referencing R. 551-52), failed to provide good reasons for discounting the opinions of Drs. Harrington and Cicchetti and P.A. Roberts, and was required to contact Dr. Moreland to provide a function-by-function assessment of Plaintiff's ability to work. Plaintiff's Memorandum at 20-23. Defendant maintains that the ALJ properly afforded limited weight to the findings of Drs. Harrington and Cicchetti and P.A. Roberts as such findings were submitted on a check-box form with no

underlying explanation and that P.A. Roberts completed the check-box form after treating Plaintiff on only three occasions. Defendant's Memorandum at 18-20.

Plaintiff's disability application filed on February 18, 2015, is subject to the treating physician rule. See 20 C.F.R. §§ 404.1527, 416.927 (2017). Generally, the opinion of a treating physician is entitled to significant weight but only when "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [] not inconsistent with other substantial evidence in the case record." *Crowell v. Comm'r of Soc. Sec. Admin.*, 705 Fed. App'x. 34, 35 (2d Cir. 2017) (quoting *Burgess v. Astrue ("Burgess")*, 537 F.3d 117, 128 (2d Cir. 2008), 20 C.F.R. § 404.1527(d)(2)). In instances where the ALJ discounts a treating physician's opinion however, the ALJ must set forth "good reasons" for doing so. *Burgess*, 537 F.3d at 129 (citing *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004)). The failure to provide good reasons for rejecting a treating physician opinion is grounds for remand. *Schall v. Apfel*, 134 F.3d 496, 503-05 (2d Cir. 2004) (*per curiam)* ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician['s] opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.").

In this case, the ALJ afforded "limited weight" to Dr. Harrington's finding that Plaintiff was able to sit for four hours and stand and walk for three hours in an eight-hour workday because such finding was inconsistent with evidence that Plaintiff's ability to function would limit Plaintiff to work at the sedentary level of exertion, and appeared solely on a "check box" form without any supporting explanation. (R. 18). There is no

authority to support Defendant's argument that check-the-box forms are less reliable than other medical forms, s*ee Garcia Medina v. Commissioner of Social Security*, 2019 WL 1230081, at *3 (W.D.N.Y. Mar. 15, 2019) ("[t]here is no authority that a 'check the box' form is any less reliable than any other type of form; indeed, agency physicians routinely use these types of forms to assess the intensity, persistence, or limiting effects of impairments"), and the ALJ's determination that the forms completed by Drs. Harrington and Cicchetti and P.A. Roberts was insufficient to support findings on Plaintiff's limitations would normally require remand to afford the ALJ the opportunity to contact the physicians for further explanation.  *See McGee v. Commissioner of Social Security*, 2019 WL 3450964, at *6 (W.D.N.Y. Jul. 31, 2019) (disability decisions with an onset date before March 27, 2017, require adherence to the treating physician rule and the ALJ's duty to recontact a claimant's treating physician to complete the record where necessary).  In this case however, substantial evidence supports the ALJ's decision to afford little weight to Drs. Harrington and Cicchetti and P.A. Roberts's findings that Plaintiff is limited in Plaintiff's ability to sit, stand and walk.  In particular, on April 25, 2014, Dr. Harrington treated Plaintiff for rotator cuff pain (R. 562), on July 18, 2014, noted that Plaintiff reported left arm weakness with decreased range of motion (R. 371), on October 17, 2014, noted that Plaintiff's left arm weakness would limit Plaintiff's ability to protect himself should a physical altercation arise during Plaintiff's employment (R. 560), and  on January 23, 2015, noted that Plaintiff reported only left arm weakness. (R. 556).  On October 24, 2014, Dr. Cicchetti reviewed ultrasound imaging of Plaintiff's left elbow and diagnosed Plaintiff with left elbow osteoarthritis (R. 418), and on February 20, 2015, noted that Plaintiff reported increased neck pain after moving a snowblower

from his garage, remained capable of lifting moderate weights, was unable to drive for extended periods of time because of his neck pain, was able to engage in usual recreational activities, and that Plaintiff's impairments did not limit Plaintiff to a sedentary or semi-sedentary level. (R. 408). On March 27, 2015, Dr. Cicchetti noted that Plaintiff rated his neck pain as three on a ten-point scale, that Plaintiff's gait and station were normal, that Plaintiff's pain was relieved by medication, and that Plaintiff's pain did not cause Plaintiff to remain sedentary or semi-sedentary. (R. 547). On August 2, 2016, Dr. Hoy reviewed an MRI scan of Plaintiff's right shoulder, diagnosed Plaintiff with right shoulder impingement syndrome and on August 2, 2016, performed surgery to repair Plaintiff's shoulder. (R. 589, 674). On November 27, 2013, Dr. Moreland completed anterior cervical microdiscectomy and fusion surgery of Plaintiff's C7-T1 disc segment to alleviate Plaintiff's neck pain (R. 304), yet, the majority of Plaintiff's complaints of pain following Plaintiff's neck surgery related to Plaintiff's right shoulder tear and not Plaintiff's neck. Notably, Plaintiff testified that standing helped to alleviate Plaintiff's neck pain (R. 67), Plaintiff experienced no problems with standing during 2014 and 2015 (R. 68-69), and Plaintiff's activities of daily living include mowing the lawn, doing laundry and washing dishes. (R. 71). In accordance with the foregoing, Discussion *supra,* at 10-12, nothing in this record indicates that Plaintiff's shoulder impairment resulted in any restriction to Plaintiff's ability to sit, stand or walk. The ALJ's determination to afford little weight to Dr. Harrington's finding that Plaintiff was limited to sitting for four hours and standing and walking for three hours in an eight-hour workday, and Dr. Cicchetti and P.A. Roberts's finding that Plaintiff was limited to one hour of

standing, sitting and walking is therefore supported by substantial evidence in the record. Plaintiff's motion on this issue is DENIED.

Plaintiff's further argument, Plaintiff's Memorandum at 23, that the ALJ was required to re-contact Dr. Moreland for a function-by-function assessment of Plaintiff's exertional abilities is also without merit. Dr. Moreland completed a consultative physical examination of Plaintiff on October 24, 2013 (R. 271-73), reviewed Plaintiff's cervical MRI on October 29, 2013 (R. 281), completed Plaintiff's anterior microdiscectomy surgery on November 27, 2013 (R. 304-06), and a post-surgical examination of Plaintiff on April 4, 2014, that showed good results. (R. 322). On April 32, 2014, and June 24, 2014, Plaintiff's reported only shoulder and left elbow pain. (R. 322, 375). The ALJ included the complete history of Dr. Moreland's findings in the ALJ's disability determination (R. 14), affording little weight to Dr. Moreland's finding that Plaintiff was temporarily partially disabled for three months and unable to perform work as a corrections officer because Dr. Moreland's opinion did not provide any indication of Plaintiff's ability to perform other work. (R. 17). Absent more definitive evidence that Plaintiff was disabled from work, the ALJ was not required to re-contact Dr. Moreland for a function-by-function assessment of Plaintiff's exertional ability. *See Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996) (ALJ not required to further develop the record where record includes complete medical history sufficient for ALJ to make an informed disability determination). Plaintiff's motion on this issue is DENIED.

<u>Credibility of Plaintiff's Subjective Complaints</u>

In this case, the ALJ, as required, upon evaluating Plaintiff's impairments under 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526, determined that Plaintiff's medically

13

determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms, however, Plaintiff's statements concerning the intensity, persistence and limiting effects of Plaintiff's symptoms were not credible to the extent the statements were inconsistent with Plaintiff's testimony. (R. 14). Plaintiff contends that the ALJ's credibility determination is erroneous because the ALJ failed to consider relevant factors, and merely summarized medical evidence in the record. Plaintiff's Memorandum at 29. Defendant maintains that the ALJ properly evaluated Plaintiff's credibility and supported the ALJ's credibility finding with Plaintiff's inconsistent statements, allegations of pain, and activities of daily living. Defendant's Memorandum at 23-24).

It is the function of the ALJ, not the court, to assess the credibility of witnesses. *See Tankisi v. Commissioner of Social Security*, 521 Fed. Appx. 29, 35 (2d Cir. 2013). Pain or other symptoms may be important factors contributing to a disability claimant's functional loss and affects a claimant's ability to perform basic work activities where relevant medical signs or laboratory findings show the existence of a medically determinable impairment that could "reasonably" be expected to cause the associated pain or other symptoms. 20 C.F.R. § 404.1529(c)(3). "A claimant's testimony is entitled to considerable weight when it is consistent with and supported by objective medical evidence demonstrating that the claimant has a medical impairment which one could reasonably anticipate would produce such symptoms." *Hall v. Astrue*, 677 F.Supp.2d 617, 630 (W.D.N.Y. 2009) (citing *Latham v. Commissioner of Social Security*, 2009 WL 1605414, at *15 (N.D.N.Y. 2009)). In this case, the ALJ's credibility finding is supported by substantial evidence in the record. In particular, Plaintiff testified that a standing

position helped to alleviate Plaintiff's neck pain (R. 67), Plaintiff experienced no problems with standing during 2014 and 2015 (R. 68-69), and that Plaintiff's activities of daily living include mowing the lawn, doing laundry and washing dishes. (R. 71). On February 20, 2015, Dr. Cicchetti noted that Plaintiff reported increased neck pain after moving a snowblower from his garage and that Plaintiff retained the ability to lift moderate weight. (R. 408). Also, on March 27, 2015, Dr. Cicchetti noted that Plaintiff's shoulder pain did not limit Plaintiff to sedentary or semi-sedentary exertion (R. 547). The ALJ's credibility assessment of Plaintiff is therefore based on substantial evidence sufficiently accounted for in the ALJ's residual functional capacity assessment. Plaintiff's motion for remand on the issue of Plaintiff's credibility is thus without merit and is DENIED. *See Sloan v. Colvin,* 24 F.Supp.3d 315, 328-29 (W.D.N.Y. 2014) (no remand where ALJ evaluated Plaintiff's credibility based on Plaintiff's testimony, activities of daily living and conflicting medical evidence).

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. No. 6) is DENIED; Defendant's Motion (Dkt. No. 8) is GRANTED. The Clerk of Court is directed to close the file.
SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:	March 30th, 2020
	Buffalo, New York